# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>v.<br><br>(9) Jose Rusben Alamo-Santellanes,<br>also known as Paco,<br><br>  Defendant. | Crim. No. 10-339 (PJS/JJK)<br><br>**ORDER AND REPORT<br>AND RECOMMENDATION** |

Jeffrey S. Paulsen, Esq., United States Attorney's Office, counsel for Plaintiff.

Kevin M. O'Brien, Esq., O'Brien Law Office, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

The District Court has referred Defendant's Motion for Suppression of Evidence from Search and Seizure (Doc. No. 488), Defendant's Motion to Suppress Statements (Doc. No. 489), and Defendant's Motion for Suppression of Evidence Obtained from Electronic Interception (Doc. No. 490), for a Report and Recommendation under 28 U.S.C. § 636 and D. Minn. LR 72.1. On February 5, 2013, this Court held a hearing on Defendant's motions, at which Sergeant Anthony Fletcher of the Hennepin County Sheriff's Office testified for the Government.

This is a multi-defendant drug conspiracy case in which the Government has charged Defendant Jose Rusben Alamo-Santellanes ("Defendant") with one count of conspiracy to distribute methamphetamine, cocaine, and marijuana, and one count of distribution of methamphetamine. (Doc. No. 239, Second Superseding Indictment, Counts 1 and 10.) During the Government's investigation of co-Defendant Noe Alamos-Pantoja and others believed to be involved in the drug-trafficking organization that is the subject of this case ("the Alamos-Pantoja drug-trafficking organization"), Sergeant Fletcher and another officer in the Hennepin County Sheriff's Office, who were serving on a Drug Enforcement Agency ("DEA") Task Force, seized a Ford Expedition that was located at a Minneapolis residence. The officers subsequently searched that vehicle pursuant to a search warrant and discovered a large amount of cash. While at the Minneapolis residence, the officers also obtained statements from several individuals, including an individual who identified himself as Jose Rusben Alamo-Santellanes. In addition, as part of its investigation of the Alamos-Pantoja drug-trafficking organization, the Government obtained judicial authorization for a wiretap of co-Defendant Noe Alamos-Pantoja's telephone. Using the wiretap, the Government intercepted telephone communications in which Defendant was involved.

In the motions now pending before this Court, Defendant seeks to suppress evidence obtained in the search of the Ford Expedition, certain statements the Government obtained at the Minneapolis home where that vehicle

was discovered, and evidence obtained with the wiretap. As discussed below, based on the motions, the testimony at the February 4, 2013 hearing, the parties' submissions, and on all the other proceedings in this case, this Court recommends that Defendant's motions be denied.

**FACTS**

*The December 17, 2010 Seizure of the Ford Expedition and Defendant's Statements*

Some of the facts relevant to Defendant's motions have been the subject of other Orders and Reports and Recommendations in this case. For example, Magistrate Judge Jeanne J. Graham's March 22, 2011 Report and Recommendation concerning co-Defendant Jairo Santiago Chaides ("Chaides") describes, in detail, the circumstances in which the Ford Expedition was seized and searched. (Doc. No. 165, Mar. 22, 2011 Report and Recommendation ("Chaides R&R"), *adopted in part by* Doc. No. 238, May 11, 2011 Order.) In the Chaides R&R, Judge Graham explained that the Government had been investigating the Alamos-Pantoja drug-trafficking organization since at least May 2010. (Chaides R&R 2.) During the summer of 2010, the Government encountered Chaides and his vehicle, the Ford Expedition at issue here, on multiple occasions. (*Id.*) Chaides was arrested on December 15, 2010, and two days later DEA Task Force agents in the Hennepin County Sheriff's office visited a house on Humboldt Avenue in Minneapolis that was believed to be associated with the Alamos-Pantoja drug-trafficking organization. (*Id.*) Using the pretext

3

that they were visiting the Humboldt Avenue house to look for a stolen car, they obtained the consent to search in the garage from the home's owner or lessee, a woman named Germana Santellanes. (*Id.*) Ms. Santellanes appears to be Defendant's mother. (*See id.* at 11.)

Defendant's brother,[1] identifying himself as Jose Rusben Alamo-Santellanes, informed the DEA agents that his mother did not speak English and that he was staying in her basement. (Chaides R&R 11.) The Task Force agents asked Defendant's brother to translate for Ms. Santellanes and tell her why the agents had come to her home, which he did. (*Id.*) The agents asked Defendant's brother to explain to his mother that they were looking for a stolen car and needed her permission to look in the garage. (*Id.* at 12.) They stated that they would go on their way if the vehicle they were looking for was not in the garage. (*Id.*) Ms. Santellanes told Defendant's brother in Spanish that she understood and gave her "go ahead" to look in the garage. (*Id.*)

---

[1] At the February 5, 2013 hearing in this matter, Hennepin County Sheriff's Office Sergeant Anthony Fletcher, who was working as a DEA Task Force agent, testified that the individual he encountered at Ms. Santellanes's home was not, in fact, the Defendant in this case. Instead, Sergeant Fletcher tentatively identified an individual seated in the courtroom gallery as the individual with whom he spoke at Ms. Santellanes's house, and this individual may have been Defendant's brother. (Doc. No. 503, Tr. of Feb. 5, 2013 Mots. Hr'g ("Tr.") 18:14–19:5 (indicating that the individual who identified himself as "Jose" was not the defendant but "looks more like the guy that's sitting in the back row there").) As explained more fully below, the Government has represented that it will not attempt to use the statements that the individual at Ms. Santellanes's home made against Defendant at his trial as his own statements or admissions, and Defendant has withdrawn his motion to suppress statements based on that representation. Thus, this Court assumes for the purposes of this Report and Recommendation that these statements were made by Defendant's brother.

In the garage, the agents found Chaides' Ford Expedition bearing California plates. (Chaides R&R 12.) They returned to the house and asked Defendant's brother, Ms. Santellanes, and a third occupant of the house whether they knew anything about the car in the garage. (*Id.*) All of these individuals said that they knew nothing about the vehicle, its owner, how long it had been in the garage, or how it got there. (*Id.*) The officers then told them that they were going to tow the car. (*Id.*) No one objected, at which point the officers called a towing company and had the car towed to a secure location. (*Id.*)

Judge Graham concluded that Germana Santellanes gave voluntary consent for the agents to search the garage. (Chaides R&R 12–13.) Judge Graham also concluded that the officers had probable cause to seize the car and that the search warrant obtained for the subsequent search of the car that turned up over $186,000 in a secret compartment under the hood was properly obtained. (*Id.* at 13–23.) In an Order dated May 11, 2011, United States District Judge Patrick Schiltz "agree[d] with Judge Graham's recommendation" that co-Defendant Chaides's motion to suppress evidence found in his car be denied. (Doc. No. 238.)

At the February 5, 2013 hearing, Sergeant Fletcher testified consistently with the evidence on which Judge Graham based her conclusions in the Chaides R&R. Concerning the interaction with Ms. Santellanes at the Humboldt Avenue residence, Sergeant Fletcher explained how Ms. Santellanes consented to allow the officers to look around the garage for a stolen vehicle. He explained that the

officers dressed in street clothes rather than in uniform, that they most likely did not display any weapons because they were wearing jackets, that they never threatened Germana, and that they communicated with her through Defendant's brother acting as a translator. Sergeant Fletcher testified that Ms. Santellanes consented to the officers looking around the garage for the vehicle without any hesitation and that no one objected to the officers doing so. He also testified that none of the occupants of the home objected when the officers said that they found the vehicle they were looking for and were going to have it towed. He further explained that the occupants of the home denied having any knowledge of the vehicle at all. The officers then secured a search warrant for the vehicle, and when they executed that warrant, they discovered around $181,000 in cash, which they seized. Defendant cross-examined Sergeant Fletcher at the hearing concerning the details of the officers' interactions with Ms. Santellanes and Defendant's brother at the Humboldt Avenue residence, which revealed nothing inconsistent with the evidence before Judge Graham. (*See generally* Tr. 7:15–35:16.)

***The Use of a Wiretap to Intercept Defendant's Communications***

As with the seizure of the Ford Expedition at Germana's Minneapolis home and the subsequent search of the vehicle, the facts relevant to the legality of the wiretap at issue in this case were also the subject of a prior Order and Report and Recommendation. Specifically, the undersigned issued a Report and Recommendation on March 24, 2011, addressing co-Defendant Noe Alamos-

6

Pantoja's motion to suppress the contents of any intercepted wire or oral communications. (Doc. No. 167, Mar. 24, 2011 Report and Recommendation ("Alamos-Pantoja R&R").) In that recommendation, this Court noted that, prior to applying for a wiretap, Detective Jeffrey Miller worked with a number of confidential sources to investigate the Alamos-Pantoja drug-trafficking organization, including monitoring phone calls, surveilling certain individuals believed to be involved in the organization, and meeting with reliable confidential sources. (*Id.* at 1–2.) After these investigative techniques proved insufficient to obtain the information the Government believed it would need to get convictions of the individuals involved in the drug conspiracy, it applied to District Judge John R. Tunheim for a wiretap. On June 25, 2010, Judge Tunheim authorized wire interceptions of Alamos-Pantoja's telephone. (*Id.* at 2.) On June 28, 2010, Chief District Court Judge Michael J. Davis signed an amended order authorizing interceptions of not only phone calls, but also text messages for Alamos-Pantoja's phone. (*Id.*) Then, on July 23, 2010, Judge Tunheim authorized continued interception of these communications for an additional thirty days. (*Id.*)

After reviewing the affidavits underlying the wiretap warrant applications, this Court concluded that the Government had adequately shown that there was probable cause to support the wiretaps and that the Government had properly established that the wiretaps were necessary because other investigative methods had been tried and failed. (Alamos-Pantoja R&R 3–7.) Based on that conclusion, this Court recommended that co-Defendant Alamos-Pantoja's motion

7

to suppress be denied.  (*Id.* at 7.)  Judge Schiltz adopted this recommendation in an April 11, 2011 Order.  (Doc. No. 185.)

At the February 5, 2013 hearing, Defendant agreed that his motion to suppress evidence obtained through the wiretap should be considered "on the four corners" of the application for the wiretap and counsel's argument.  (Tr. 5:15–6:8.)

## DISCUSSION

### I. Motion to Suppress Evidence Obtained from Search and Seizure

Defendant seeks to suppress the evidence obtained from the search of the Ford Expedition on the grounds that the warrantless seizure of the vehicle from the garage at the Humboldt Avenue residence was unconstitutional and that the search warrant the Government later obtained fails to demonstrate the requisite probable cause.  (Doc. No. 500, Def.'s Post-Hr'g Mem. 1.)  The Government asserts that Defendant lacks "standing"[2] to challenge either the officers' entry into the residence, the seizure of the vehicle, or its subsequent search because he has failed to show any reasonable expectation of privacy in the residence or the vehicle.  (Doc. No. 501, Gov't's Post-Hr'g Mem. 1–2.)  Alternatively, the Government argues that the officers obtained valid consent to enter the garage, had probable cause to temporarily seize the vehicle while they obtained a search

---

[2] As pointed out by Judge Schiltz in his May 11, 2011 Order in this case, the concept of "Fourth Amendment 'standing'" is actually not an issue of standing at all, but a matter of substantive Fourth Amendment rights that asks whether a person has a "legitimate expectation of privacy with respect to the subject of a challenged search."  (Doc. No. 238 at 1–2 n.1.)

8

warrant, and that the search warrant adequately shows probable cause. (*Id.* at 3–6.)

Here, Defendant has failed to demonstrate a legitimate expectation of privacy in the residence or the vehicle that would permit him to challenge the officers' seizure of the Ford or its subsequent search. A defendant moving to suppress evidence must show a legitimate expectation of privacy in the thing searched. *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994); *United States v. Pierson*, 219 F.3d 803, 806 (8th Cir. 2000) (noting that the defendant has the burden of establishing a reasonable expectation of privacy). When a defendant does not show a sufficiently close connection to a place or object to be searched he cannot "claim that [the place or object was] searched or seized illegally." *Gomez*, 16 F.3d at 256. To determine whether the connection to a place or object is close enough to for a defendant to challenge a search, a court looks at factors such as ownership, possession, and use of and ability to control the place searched or the item seized. *Pierson*, 219 F.3d at 806.

There is no evidence in the record, and Defendant offered none at the February 5, 2013 hearing, that he resides at the Humboldt Avenue residence.[3] Defendant contends that because the residence was his "family's home," he has a reasonable expectation of privacy sufficient to allow him to challenge the initial

---

[3] Because it is Defendant's burden to establish a reasonable expectation of privacy in the Humboldt Avenue residence, his contention that "the government has not waived a claim that the defendant lived at the . . . property" is irrelevant to the question of whether he has established a legitimate expectation of privacy in that particular place. (*See* Def.'s Post-Hr'g Mem. 1.)

consent search of the garage. (*Id.*) But, a defendant does not have a reasonable expectation of privacy in a residence simply because it is his parents' home. *United States v. Skoda*, __ F.3d __, 2013 WL 514452, at *2 (8th Cir. 2013) (concluding that "defendants have no expectation of privacy in a parent's home when they do not live there" and citing *United States v. Beasley*, 688 F.3d 523, 531 (8th Cir. 2012) (same)). In addition, Defendant concedes that he has no "claim of privacy or possessory interest in the Ford Expedition." (Def.'s Post-Hr'g Mem. 1.) Because Defendant has disavowed any interest in the vehicle, he cannot challenge its search. *See Rakas v. Illinois*, 439 U.S. 128, 148 (1978) (concluding that the defendants' Fourth Amendment claims failed because they "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized"); *United States v. Ruiz-Zarate*, 678 F.3d 683, 689 (8th Cir. 2012) (concluding that the defendant had no reasonable expectation of privacy in another's vehicle that the defendant did not own and was nowhere near at the time the vehicle was seized).

Because Defendant does not have a reasonable expectation of privacy in his mother's home or the vehicle to raise a Fourth Amendment challenge, this Court concludes that Defendant's motion to suppress evidence obtained as a result of the search and seizure of the Ford Expedition must be denied. Alternatively, even if Defendant could challenge the seizure of the vehicle or the sufficiency of the probable cause for the warrant, for the same reasons discussed in Magistrate Judge Graham's Chaides R&R, this Court would conclude that the

search of the garage was made pursuant to Ms. Santellanes's valid consent, that the temporary warrantless seizure of the vehicle was supported by probable cause, and that the subsequent search warrant adequately set forth the requisite probable cause for the search of the Ford.

## II. Motion to Suppress Statements

Based on the Government's representation in a letter to the undersigned following the February 5, 2013 hearing stating that the Government will not offer the statements made by Defendant's brother at the Humboldt Avenue residence as Defendant's own statements or admissions, Defendant withdrew his motion to suppress statements. Therefore, Defendant's Motion to Suppress Statements is **WITHDRAWN** and requires no further action from the Court.

## III. MOTION TO SUPPRESS EVIDENCE OBTAINED BY ELECTRONIC SURVEILLANCE

Defendant argues that for a three-day period the Government had no authority under its initial June 25, 2010 wiretap warrant to obtain text messages, and that it did not obtain that authority until June 28, 2010. Thus, Defendant contends, the Government must be prohibited from using any text messages Defendant sent against him at trial. The Government represents, however, that it did not obtain any text messages from Defendant during the three-day period Defendant identifies. Based on the Government's representation, this Court concludes that Defendant's motion must be denied as moot to the extent it relates to any text messages sent by Defendant from June 25–28, 2010.

Otherwise, Defendant's motion to suppress wiretap evidence raises no issues different from those addressed by the undersigned in the Alamos-Pantoja R&R. Defendant presents no new information necessitating further review on the issues of probable cause and necessity. Therefore, this Court recommends that Defendant's motion be denied for the same reasons set forth in the March 24, 2011 Report and Recommendation in co-Defendant Alamos-Pantoja's case. (*See* Doc. No. 167, Alamos-Pantoja R&R 3–7.)

## ORDER

Based on the above, and on all the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that:

1. Defendant's Pretrial Motion to Suppress Statements (Doc. No. 489), is **WITHDRAWN**.

## RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendant's Pretrial Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 488), be **DENIED**; and

2. Defendant's Pretrial Motion to Suppress Evidence Obtained from Electronic Surveillance (Doc. No. 490), be **DENIED**.

Dated: February 26, 2012

    *s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **March 12, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen** days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.